USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/13/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
DEL MEDICAL IMAGING CORP.,      :
                                :
            Plaintiff,          :    08 Civ. 8556(LAP)(DFE)
                                :
        -against-               :         ORDER
                                :
CR TECH USA, INC. and,          :
CR TECH,                        :
                                :
            Defendants.         :
------------------------------X

LORETTA A. PRESKA, Chief United States District Judge:

    Plaintiff Del Medical Imaging Corporation ("Plaintiff")

brings this action against defendants CR Tech Ltd. ("CR Tech

Israel") and CR Tech USA, Inc. ("CR Tech USA") (collectively

"Defendants") alleging violations of federal and state law in

connection with Plaintiff's purchase of allegedly deficient

medical equipment from CR Tech Israel.  Plaintiff's motion for

entry of default against Defendants was granted on January 22,

2009 [dkt. no. 6].  The matter was then submitted to Magistrate

Judge Douglas F. Eaton for a damages inquest [dkt. no. 7].

Judge Eaton construed certain submissions offered by Defendants

as a motion to vacate the default under Fed. R. Civ. P. 55(c).

Judge Eaton then issued a Report and Recommendation ("Report")

urging this Court to vacate the entries of default against

Defendants.  Judge Eaton also recommends that the action against

CR Tech USA be dismissed for lack of personal jurisdiction and

the action against CR Tech Israel be transferred to the Northern District of Illinois, where the company is subject to personal jurisdiction.  Plaintiff submitted a memorandum of law ("Pl. Memo.") objecting to Judge Eaton's Report.  For the reasons set forth below, the Court adopts Judge Eaton's recommendations in full.

I.   BACKGROUND

A.   Parties

Plaintiff is the largest supplier of general purpose radiographic systems to independent distributors in the country. (Report at 1.)  It is a Delaware corporation with its principal place of business in Illinois. (Id. at 3.)

CR Tech Israel is an Israeli corporation that manufactures computer radiology equipment for creating digital images. (Id.)[1]

The Complaint named the other defendant as "CR Tech USA, Inc." and alleged upon information and belief that it is a New York corporation. (Id.)  Plaintiff was subsequently informed by Mudivedu Ramesh that there is no such corporate entity and that Mr. Ramesh began using "CR Tech USA" as one of his business names on April 21, 2008. (Id.)  Plaintiffs' allegations

---

[1] While the Complaint named CR Tech Israel as "CR Tech," Plaintiff's inquest papers contain a memo received from the Israeli company on letterhead stating its name as "CR Tech Ltd." For the sake of clarity, the company will be referred to as "CR Tech Israel."

2

generally do not distinguish between CR Tech Israel and CR Tech USA.

B. Allegations

Plaintiff alleges that on October 25, 2007, Plaintiff and CR Tech Israel executed a Letter of Intent that set forth terms for Plaintiff's purchase of CR-View Units ("units") from Defendants. (Id.) Between October 2007 and February 2008, Plaintiff purchased sixteen units for a total price of $275,000. (Id.) The units were shipped from Israel to Illinois, and Plaintiff made its final payment to CR Tech Israel on March 4, 2008. (Id. at 4.) Neither the Complaint nor Plaintiff's inquest documents allege any involvement in this transaction by either CR Tech USA or Mr. Ramesh. (Id.)

Plaintiff requires that the products it sells be certified by Underwriters Laboratory ("UL"). (Id.) Contrary to CR Tech Israel's alleged representations, the units sold to Plaintiff lacked the requisite certification. (Id.) Plaintiff was informed by a customer on April 17, 2008, that the units not only lacked UL labeling, but did not comply with UL standards. (Id. at 4.) In an e-mail responding to Plaintiff's concerns regarding the UL labeling dated July 20, 2008, CR Tech Israel directed Plaintiff to ship the units to "Mudi Ramesh, CR Tech USA, Inc." at Mr. Ramesh's address in New York so that the UL labels could be affixed. (Id. at 4-5.) Plaintiff never shipped

3

the units to New York and does not allege that it ever intended to do so. (Id.) Instead, Plaintiff filed this action on October 7, 2008. (Id.)

Plaintiff directs its allegations throughout the Complaint at the "defendants." However, Plaintiff only makes two specific allegations regarding CR Tech USA: (1) CR Tech USA is a New York corporation, and (2) CR Tech Israel is doing business in the United States through CR Tech USA and otherwise. (Id. at 6.)

### C. Procedural History

A summons and copy of the Complaint were served on Mr. Ramesh, as the presumed President of CR Tech USA, on October 23, 2008. (Id.)[2] On October 31, 2008, Mr. Ramesh sent a letter ("October letter") to Plaintiff's counsel revealing several facts: (1) Mr. Ramesh had been doing business as CR Tech USA since April 21, 2008; (2) there is no such corporate entity as CR Tech USA; (3) CR Tech USA is an independent, non-exclusive distributor for CR Tech Israel and other companies; (4) apart from the non-exclusive distribution arrangement, there is no ownership or other relationship between CR Tech USA and CR Tech Israel; (5) CR Tech USA was not a party to the transaction at issue in the Complaint; (6) CR Tech USA was not a party to any communications at issue in the Complaint; (7) prior to receiving the Complaint, CR Tech USA had no knowledge regarding the UL

---

[2] Mr. Ramesh is not named as a defendant in this action.

4

certification problems with the units; and (8) Mr. Ramesh, doing business as "Anamika," is a dealer for Plaintiff. (Id. at 6-7.) Based on these assertions, Mr. Ramesh requested that Plaintiff withdraw the Complaint against him. (Id. at 8.)

A summons and Complaint were also served on Moshe Katz, as President and CEO of CR Tech Israel, on December 1, 2008, while Mr. Katz was attending a conference in Chicago. (Id.)

On January 20, 2009, without providing notice to either defendant, Plaintiff moved for entry of default against both defendants under Federal Rule of Civil Procedure 55(a) for "fail[ure] to plead or otherwise defend." (Report at 8.) Plaintiff neglected to mention the October letter received from Mr. Ramesh. (Id.) Unaware of Mr. Ramesh's October letter, the Clerk of Court signed the proposed Clerk's certificate of default on January 20, 2009 [see dkt. no. 5]. This Court then granted the request to enter default and referred the case to Judge Eaton for an inquest on damages [dkt. no. 6].

On February 20, 2009, Judge Eaton issued a Scheduling Order in which he directed Plaintiff to submit "an affidavit, from someone with personal knowledge, setting forth facts which establish that this district court has . . . personal jurisdiction over the defendants." [dkt. no. 10]. In response to the Scheduling Order, Plaintiff submitted an inquest memorandum to Judge Eaton [dkt. no. 11]. Plaintiff also wrote a

letter to this Court seeking "to amend the caption" to replace "CR Tech USA, Inc." with "Mudi Ramesh, d/b/a/ CR Tech USA, Inc." because Plaintiff had discovered that "CR Tech USA, Inc." is not a legal entity [see dkt. no. 14]. Plaintiff again did not mention Mr. Ramesh's October letter [Id.]. This Court denied Plaintiff's request, informing Plaintiff that it could not simply amend the caption to have the default applied to Mr. Ramesh, whose name appears nowhere in the Complaint, in lieu of a named defendant [Id.]. Plaintiff has not filed an amended complaint or sought to vacate the default against CR Tech USA. (Report at 10.)

In response to the entry of default, Mr. Ramesh submitted a declaration informing Judge Eaton about his October letter to Plaintiff's counsel [dkt. no. 20]. Mr. Ramesh also stated that he was not aware of the motion for default and did not consult counsel in relation to this matter because he understood his October letter to Plaintiff's counsel to conclude the matter [Id.].

Mr. Ramesh also annexed to his declaration an affidavit of Mr. Katz, CEO of CR Tech Israel [Id.]. Mr. Katz's affidavit corroborates several of Mr. Ramesh's statements in his October letter, including: (1) Mr. Ramesh is a non-exclusive distributor of CR Tech Israel's products; (2) Mr. Ramesh did not participate in the discussions leading to the sale of the units to

6

Plaintiff; (3) Mr. Ramesh was not involved in the discussions which took place between CR Tech Israel and Plaintiff after Plaintiff received the units; and (4) Mr. Ramesh did not receive any remuneration for the sale of the units to Plaintiff [Id.].

In response to Mr. Ramesh's opposition papers, Judge Eaton directed Plaintiff to include in its reply brief support for the proposition that this Court has personal jurisdiction over CR Tech Israel [dkt. no. 16]. Plaintiff neither offered any new basis for personal jurisdiction in his reply brief nor controverted the contents of the October letter and Mr. Katz's affidavit [dkt. no. 17]. Instead, Plaintiff argued that CR Tech Israel waived its personal jurisdiction objection by providing an affidavit from Mr. Katz and that, regardless, the affidavit contains a confirmation that Mr. Ramesh sells CR Tech Israel's products in New York. (Pl. Memo. at 3.) Plaintiff also points to Mr. Katz's statement that, as a non-exclusive distributor of CR Tech Israel's products, CR Tech Israel occasionally asks Mr. Ramesh to hold products until they can be sent back to Israel or repaired by a CR Tech Israel employee. (Id. at 2-3.)

On the basis of the foregoing, Judge Eaton recommends that this Court: (1) treat the inquest opposition papers as a motion to vacate the default for good cause pursuant to Federal Rule of Civil Procedure 55(c) ("Rule 55(c)"); (2) vacate the default as to both defendants; (3) dismiss the action against CR Tech USA

7

because no such corporate entity exists; and (4) dismiss the action against CR Tech Israel for lack of personal jurisdiction. (Report at 2.) Judge Eaton also recommends, if Plaintiff demonstrates that Illinois law would grant personal jurisdiction over CR Tech Israel, that the action be transferred to the Northern District of Illinois. (Id.)

## II. STANDARD OF REVIEW

When reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Grassia v. Scully, 829 F.2d 16, 19 (2d Cir. 1989). Congress used the phrase "de novo determination" in Section 636(b)(1) "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." United States v. Raddatz, 447 U.S. 667, 676 (1980). A district court may, in its sound discretion, afford a degree of deference to the Magistrate Judge's Report and Recommendation. See id. When a party makes general or conclusory objections, or simply repeats his or her original arguments, the Court reviews the Report and

8

Recommendation only for clear error. See Barratt v. Joie, No. 96 Civ. 0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002).

III. DISCUSSION

A. CR Tech USA

Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." See also Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993) ("After default or a default judgment has been entered, Rule 55(c) grants a litigant the right to petition to set either aside."). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." Enron Oil, 10 F.3d at 96. Therefore, "good cause" under Rule 55(c) should be construed generously, and "[t]he dispositions of motions for entries of defaults . . . and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case . . . ." Id. at 95-96. It is within this Court's discretion to construe Mr. Ramesh's inquest opposition papers as a motion to vacate the default. See Dunlop v. Pan Am. World Airways, Inc., 672 F.2d 1044, 1052 (2d Cir. 1982) ("Courts applying Rule 60 have construed its requirement for a 'motion' liberally . .

9

. ."). "While normally such relief is sought by motion of a party . . . nothing forbids the court to grant such relief sua sponte." Fort Knox Music Inc. v. Baptiste, 257 F.3d 108, 111 (2d Cir. 2001) (discussing Rule 60(b) relief from a default judgment); see also Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 n.2 (2d Cir. 1977) (same). In determining whether to vacate a default or default judgment, the Court must consider three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Enron Oil, 10 F.3d at 96. The Court may also consider "whether the entry of default would bring about a harsh or unfair result." Id.

First, Mr. Ramesh's default was not willful. He promptly responded to Plaintiff's counsel by letter, indicating a clear purpose to defend the suit, and there is no indication that he ignored any further communications from Plaintiff's counsel. (Report at 15.) Second, "delay standing alone does not establish prejudice," Enron Oil, 10 F.3d at 98, and Plaintiff has not alleged that any other prejudice would result in the event that the default is vacated. Third, Mr. Ramesh's letter and declaration provide information constituting a meritorious defense on the basis of lack of personal jurisdiction. Accordingly, the default entry against CR Tech USA is VACATED.

Further, Mr. Ramesh's opposition papers are construed as a motion to dismiss the Complaint against CR Tech USA for lack of personal jurisdiction. Plaintiff concedes that "CR Tech USA, Inc." does not exist as a corporate entity. Despite this concession, Plaintiff has failed to move to vacate the default against this non-existent corporate entity or to file an amended complaint naming Mr. Ramesh as a defendant. The court lacks personal jurisdiction over an entity that does not exist. See, e.g., White v. Moylan, 554 F. Supp. 2d 263, 266 (D. Conn. 2008) (dismissing for lack of personal jurisdiction a complaint which named an entity that did not exist as a defendant).[3] Based on Mr. Ramesh's letter, declaration, and Plaintiff's own admissions, the motion to dismiss the Complaint against CR Tech USA for lack of personal jurisdiction is GRANTED.

B. CR Tech Israel

    i. Motion to Vacate Default

It is within the Court's discretion to construe Mr. Katz's affidavit accompanying Mr. Ramesh's inquest opposition papers as

---

[3] Because this issue is dispositive, the Court does not decide whether CR Tech USA was entitled to notice that a default was sought on the ground that Mr. Ramesh "appeared personally" by writing the October letter to Plaintiff's counsel. Fed. R. Civ. P. 55(b)(2); see New York v. Green, 420 F.3d 99, 105 (2d Cir. 2005) (noting that, although circuits are divided, "[t]he prevailing view is that the notice requirement contained in Rule 55(b)(2) applies . . . to those parties who, although delaying in a formal sense by failing to file pleadings within the twenty-day period, have otherwise indicated to the moving party a clear purpose to defend the suit.").

a motion to vacate the default under Rule 55(c). See Dunlop, 672 F.2d at 1052 (2d Cir. 1982). It is also within the Court's power to grant such relief sua sponte. Fort Knox, 257 F.3d at 111.

Applying the three Enron Oil factors leads this Court to vacate the default against CR Tech Israel. 10 F.3d at 96. First, although CR Tech Israel is responsible for a delay in responding to the Complaint between Dec. 21, 2008 and Feb. 20, 2009, CR Tech Israel was aware from the allegations in the Complaint that Plaintiff lacked any basis to bring this action in New York and was also likely aware of Mr. Ramesh's letter to Plaintiff's counsel. (Report at 16.) Therefore, the Court agrees with Judge Eaton that "there was a degree of willfulness in the failure of the Israeli company to serve or file an answer or motion addressed to the Complaint, but not egregious willfulness." (Id.) Second, vacating the default will not unfairly prejudice Plaintiff because Plaintiff was only subjected to a two-month delay before Judge Eaton issued a scheduling order directing Plaintiff to submit an affidavit establishing that the Court has personal jurisdiction over CR Tech Israel. Third, although CR Tech Israel's response was delayed, Mr. Katz's affidavit does raise a meritorious defense that this Court lacks personal jurisdiction. Accordingly, the default entered against CR Tech Israel is VACATED.

## ii. Motion to Dismiss for Lack of Personal

### Jurisdiction

The opposition papers and Mr. Katz's accompanying affidavit may be construed as raising an objection to the exercise of personal jurisdiction by this Court over CR Tech Israel. The affidavit evinced a clear purpose to defend the suit on the grounds that this Court does not have personal jurisdiction over CR Tech Israel on the basis of its relationship with Mr. Ramesh or CR Tech USA. Because CR Tech Israel's intent in filing the affidavit is clear, the Court exercises its discretion and construes the affidavit as a motion to dismiss for lack of personal jurisdiction.

"[W]hen the issue [of personal jurisdiction] is decided initially on the pleadings and without discovery," as is the case here, "the plaintiff need show only a prima facie case" that jurisdiction exists. Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984). At this stage in the proceedings, "all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor." Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985).

New York law determines whether this Court holds personal jurisdiction over CR Tech Israel. See Landoil Res. Corp. v.

Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 n.4 (2d

Cir. 1990) ("There is no question that personal jurisdiction in

this diversity action is governed by New York law.").[4]  Plaintiff

argues that CR Tech Israel is subject to personal jurisdiction

in New York pursuant to N.Y. C.P.L.R. § 301 ("Section 301"),

which confers "jurisdiction over such persons . . . as might

have been exercised heretofore."  Section 301, "as construed by

the New York courts, permits a court to exercise jurisdiction

over a foreign corporation on any cause of action if the

defendant is 'engaged in such a continuous and systematic course

of doing business here as to warrant a finding of its presence

in this jurisdiction.'"  Landoil, 918 F.2d at 1043 (quoting

McGowan v. Smith, 52 N.Y.2d 268, 272 (1981) (internal quotation

marks omitted)).[5]

     "In order to establish that this standard is met, a

plaintiff must show that a defendant engaged in 'continuous,

permanent, and substantial activity in New York.'"  Wiwa v. Royal

Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000) (quoting

Landoil, 918 F.3d at 1043); see also Laufer v. Ostrow, 55 N.Y.2d

---

[4] Because "[t]he reach of New York's long-arm statue . . . does
not coincide with the limits of the Due Process Clause," this
Court need not address the constitutional issue if jurisdiction
is statutorily impermissible. See Best Van Lines, Inc. v.
Walker, 490 F.3d 239, 244 (2d Cir. 2007).
[5] Plaintiff does not claim that its cause of action arose from CR
Tech Israel's direct transaction of any business in New York
which would bring it within the jurisdiction of the Court
pursuant to N.Y. C.P.L.R. § 302.

14

305, 309 (1982) ("The test, though not precise, is a simple pragmatic one: is the aggregate of the corporation's activities in the State such that it may be said to be present in the State not occasionally or casually, but with a fair measure of permanence and continuity . . . .") (internal quotation marks and citations omitted). "Solicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer . . . ." Laufer, 55 N.Y.2d at 310. Rather, the corporation must be engaged in "activities of substance in addition to solicitation" in order to establish personal jurisdiction. Id. Therefore, "a foreign supplier of goods or services for whom an independent agency solicits orders from New York purchasers is not present in New York and may not be sued here, however substantial in amount the resulting orders." Id. at 311.

1. Plaintiff has failed to show a prima facie case that CR Tech Israel engaged in "solicitation-plus" in New York

Plaintiff has failed to make a prima facie showing that CR Tech Israel is engaged in any substantial activity beyond mere solicitation in New York. See Landoil, 918 F.2d at 1043-44 ("[I]f the solicitation is substantial and continuous, and defendant engages in other activities of substance in the state, then personal jurisdiction may properly be found to exist.")

15

(emphasis added). Plaintiff points to several statements in Mr. Katz's affidavit that purportedly support a finding that CR Tech Israel permanently and continuously does business in New York: (1) Mr. Ramesh is a non-exclusive distributor of CR Tech Israel's products; and (2) CR Tech Israel "from time to time" asks Mr. Ramesh, as a non-exclusive distributor, to hold a faulty product until it can be sent back to Israel, or until a CR Tech Israel employee can travel to the office to work on the product. (Report 12-13.)

None of these statements, even when construed in the light most favorable to Plaintiff, establishes a prima facie case that CR Tech Israel, beyond its solicitation of orders through an independent distributor, engages in anything other than occasional and casual activity in New York. The fact that CR Tech Israel occasionally asked Mr. Ramesh to store its defective products at his office and occasionally sent employees to New York to repair its products is not sufficient additional contact with New York to satisfy the solicitation-plus standard. See, e.g., Pacamor Bearings, Inc. v. Molon Motors & Coil, Inc., 477 N.Y.S.2d 856, 357 (App. Div., 3d Dep't, 1984) (holding that, in addition to substantial solicitation by independent contractor, occasional trips to New York by sales managers and engineering support to one New York buyer were insufficient to subject the defendant to the court's jurisdiction); Holness v. Maritime

Overseas Corp., 676 N.Y.S.2d 540, 543 (App. Div., 1st Dep't, 1998) (rejecting personal jurisdiction over corporation whose agent supplied office space, represented the corporation at bid openings and solicited new clients, and noting that, "[i]n general, New York has no jurisdiction over a foreign company whose only contacts with New York are advertising and marketing activities plus representatives' occasional visits to New York"); Savoleo v. Couples Hotel, 524 N.Y.S.2d 52 (App. Div., 2d Dep't, 1988) ("The mere periodic sending of corporate officers or employees into the State on corporate business is not enough to predicate a finding that a foreign corporate defendant is present for jurisdictional purposes."); see also Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205, 212 (2d Cir. 1970) ("[W]here the activities in addition to solicitation have been particularly skimpy, the courts upholding personal jurisdiction have considered it worthy of comment that the defendant was represented in New York by its own employees rather than by an independent contractor.").

## 2. Plaintiff's "Sales Force" Theory of Jurisdiction is Unavailing

Plaintiff argues that this Court may exercise personal jurisdiction on the ground that CR Tech Israel maintains a "sales force" in New York. Plaintiff attempts to characterize this as a separate theory of jurisdiction apart from the

standard solicitation-plus test. Putting aside the fact that
two sworn statements establish that Mr. Ramesh is not an
employee of CR Tech Israel, the cases that Plaintiff cites do
not support this theory of jurisdiction. First, Plaintiff
misconstrues the court's holding in Laufer. 55 N.Y.2d 305. The
court in Laufer found that Section 301 granted the court
personal jurisdiction over the foreign soliciting agency but
explicitly found that the court lacked jurisdiction over the
foreign supplier on whose behalf the agency solicited orders.
Id. at 311. The court, as noted above, explicitly stated that a
"foreign supplier of goods or services for whom an independent
agency solicits orders from New York purchasers is not present
in New York and may not be sued here, however substantial in
amount the resulting orders." Id. The court noted that the
agency, whose business was "limited to the soliciting of orders
and servicing of purchasers' accounts, engages directly in its
corporate activity when, by persons in its employ and present in
New York, . . . solicits and services New York accounts on a
continuous basis." Id. On the basis of these activities, the
court concluded that "[s]olicitation and servicing by a foreign
corporation sales agency of New York accounts through sales
representatives present in New York, if systematic and
continuous, is enough to subject the sales agency corporation to
New York jurisdiction." Id. (emphasis added).

Likewise, the conduct found to be sufficient to establish personal jurisdiction in Thompson Medical Co., Inc. v. Nat'l Ctr. of Nutrition, Inc. went beyond the mere presence of sales representatives in New York. 718 F. Supp. 252 (S.D.N.Y. 1989). The court noted that in addition to the defendant's "[s]olicitation . . . within New York State . . . and the significant New York revenues generated thereby, the personal visits of [defendant's] representatives upon a number of occasions to targeted hospitals in New York must be added." Id. at 254. The court found that this additional activity was sufficient to satisfy the solicitation-plus rule. Id.

Plaintiff also argues that the additional contacts requirement is satisfied by "defendant's holding [it]self out as operating in New York." Aquascutum, 426 F.2d at 212. Plaintiff argues that CR Tech Israel holds itself out as operating in New York "by selling its products in New York under the name CR Tech USA, and operating a nearly identical website as that of CR Tech USA, both of which websites market CR Tech Israel's products." (Pl. Memo. at 4.) First, Plaintiff fails to acknowledge that the Court of Appeals in Aquascutum was specifically addressing the circumstances where a foreign carrier can be held to be "doing business" in New York. 426 F.2d at 211 (emphasis added). The court explicitly noted that "this broad interpretation of 'doing business' is a response to the revolution in

international transportation and commerce [that] reflects a decision to expand New York's jurisdiction over common carriers to approach the constitutional limits." Id. The only other case that Plaintiff cites in support of this proposition, The Katz Agency, Inc. v. Evening News Ass'n, merely mentions the Aquascutum standard in dictum. 514 F. Supp. 423, 427 (S.D.N.Y. 1981). Accordingly, regardless of the merits of Plaintiff's argument that CR Tech Israel holds itself out as operating in New York, the issue is inapplicable to a foreign supplier.

### 3. The Agency Theory of Personal Jursidiction Is Unavailing

Alternatively, personal jurisdiction may be asserted over a foreign corporation "when it affiliates itself with a New York representative entity and that New York representative renders services on behalf of the foreign corporation that go beyond mere solicitation and are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available." Wiwa, 226 F.3d at 95.[6] Although the plaintiff need not establish a formal agency relationship or direct control by the defendant over its putative agent, "[t]he agent must be primarily employed by the

_____

[6] Plaintiff expressly disclaims reliance on this theory of personal jurisdiction. (Pl. Memo. at 5.) Nonetheless, it will be addressed because it is one of the more plausible grounds on which personal jurisdiction could be found in this case.

20

defendant and not engaged in similar services for other
clients." Id.

    This theory of jurisdiction is inapplicable here because
the sworn statements of Mr. Ramesh and Mr. Katz establish that
Mr. Ramesh is not primarily employed by CR Tech Israel. Rather,
he is an independent, non-exclusive distributor of CR Tech
Israel's products. (Report at 6, 13.) In fact, Mr. Ramesh also
distributes Plaintiff's products. (Id. at 7.) Plaintiff calls
this characterization of Mr. Ramesh's relationship with CR Tech
Israel "self-serving, vague, and conclusory." (Pl. Memo. at 4.)
However, Plaintiff has failed to proffer any facts that
contradict these assertions. Although the record must be
construed in favor of Plaintiff, the clear statements contained
in affidavits and declarations cannot simply be ignored absent
some reason to doubt their veracity. Therefore, Plaintiff has
failed to make a prima facie showing that Mr. Ramesh is engaged
in any substantial activities beyond solicitation on behalf of
CR Tech Israel within New York. See, e.g., Delagi v.
Volkswagenwerk A.G. of Wolfsburg, Germany, 29 N.Y.2d 426, 431
(1972) (holding that where two corporate entities are only
related by way of a distribution agreement and "there exists
truly separate corporate entities, not commonly owned, a valid
inference of agency cannot be sustained."); Frummer v. Hilton
Hotels Int'l, Inc., 19 N.Y.2d 533, 537 (1967) (holding that,

although common ownership is not a prerequisite to jurisdiction, "the fact that the two [entities] are commonly owned is significant . . . because it gives rise to a valid inference as to the broad scope of the agency."); Miller v. Surf Props., Inc., 4 N.Y.2d 475, 481 (1958) (holding that conduct within New York by agent not "involving judgment and discretion" is insufficient basis for personal jurisdiction over principal).

### 4. Plaintiff's Request for Jurisdictional Discovery

Plaintiff also requests that the Court permit it to conduct jurisdictional discovery before ruling on the issue of personal jurisdiction. Because Plaintiff has failed to allege any facts that could lead this Court to exercise personal jurisdiction over CR Tech Israel and has failed to point to any relevant information that it hopes to obtain in discovery, its request for jurisdictional discovery is denied. See, e.g., Best Van Lines, Inc. v. Walker, 490 F.3d 239, 255 (2d Cir. 2007) ("We conclude that the district court acted well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction."); Jazini v. Nissan Motor Co., 148 F.3d 181, 186 (2d Cir. 1998) (same).

### iii. CR Tech Israel Has Not Waived Its Personal

### Jurisdiction Objection

Plaintiff argues that CR Tech Israel has waived its right to assert the defense of lack of personal jurisdiction because its submission of an affidavit in response to the inquest proceedings constituted a "responsive pleading" under Federal Rule of Civil Procedure 12(h) ("Rule 12(h)") and did not raise the objection as required. Rule 12(h) provides that the lack of personal jurisdiction defense and other defenses under Rule 12(b) "are waived if they are not included in a preliminary motion under Rule 12 as required by Rule 12(g) or, if no such motion is made, they are not included in the responsive pleading or an amendment as of right to that pleading under Rule 15(a)."

An affidavit submitted in opposition to a damages inquest is not a "responsive pleading" under Rule 12(b) because it is not listed as a "pleading" under Fed. R. Civ. P. 7(a). See, e.g., Novak v. Petsforum Group, Inc., No. 02-CV-2978(DLI), 2005 WL 1861778, at *1 (E.D.N.Y. Aug. 01, 2005) ("In interpreting the Federal Rules of Civil Procedure strictly, a response to a motion for default is not a 'responsive pleading,' because it is not listed in Rule 7(a)."); Estate of Rick ex rel. Rick v. Stevens, No. C 00-4144-MWB, 2001 WL 34008709, at *7 (N.D. Iowa July 18, 2001) (holding that a reply brief, though "'responsive,'  . . . is not a 'responsive pleading' under the

23

Federal Rules of Civil Procedure, and more particularly, it is
not a 'responsive pleading' within the meaning of Rule
12(h)(1)(B)").

Although some courts in the Second Circuit have employed
different language, stating that a defendant must raise a Rule
12 defense in his "first defensive move," the courts employing
this language have done so in reference to a defendant's filing
of an answer or a pre-answer motion to dismiss without raising
the appropriate Rule 12(b) objection. See, e.g., Haywin Textile
Prods. v. Int'l Fin. Inv., 137 F. Supp. 2d 431, 434 n.2
(S.D.N.Y. 2001) ("'[A] defendant who wishes to raise the defense
of no personal jurisdiction . . . must do so in its first
defensive move, be it a Rule 12 motion or an answer.'") (quoting
Hartling v. Woodloch Pines, Inc., 97 Civ. 2587(JSM), 1998 WL
575138, at *1 (S.D.N.Y. Sept. 8, 1998) (emphasis added)
(omission in original); see also Nat'l Fire & Marine Ins. Co. v.
R.R. Res. and Recovery, Inc., No. 93 Civ. 6379(RLC), 1994 WL
606049 (S.D.N.Y. Nov. 03, 1994) ("A defendant waives this
defense if he does not raise it 'in [his] first defensive move,
be it a Rule 12 motion or a responsive pleading.'") (quoting
Index Fund, Inc. v. Hagopian, 107 F.R.D. 95, 101 (S.D.N.Y.
1985)) (emphasis added); Miller v. Batesville Casket Co., 219
F.R.D. 56, 58 (E.D.N.Y. 2003).

In support of the argument that CR Tech Israel waived this objection by submitting an affidavit, Plaintiff cites the Court of Appeals decision in Khan v. Khan where the court stated that, although the defense of insufficient service of process may be waived by a party's failure to raise it in a responsive pleading, "it is clear that . . . the Appellees raised the claim of insufficient process in their first responsive pleading, seeking to vacate the default judgment on that very basis." No. 07-3709-cv, 2010 WL 93111 (2d Cir. Jan. 12, 2010).[7] Plaintiff's reliance on this case is problematic for two reasons. First, CR Tech Israel did not, in fact, move the Court to vacate the entry of default. Rather, the Court has construed Mr. Katz's affidavit as a request to do so or, in the alternative, has deemed it appropriate to vacate the default sua sponte. Second, even if the submission of the affidavit may be deemed a "responsive pleading," the Court construes it as raising an objection to this Court's exercising personal jurisdiction over CR Tech Israel.

---

[7] Plaintiff also cites United States v. 51 Pieces of Real Property Roswell, N.M., in support of the proposition that CR Tech Israel has waived its objection. 17 F.3d 1306 (10th Cir. 1994). There the defendant's failure to raise a personal jurisdiction defense in response to a motion for default was deemed to be a waiver. Id. at 1314. However, the defendant's failure to respond occurred after the defendant had already entered a general appearance and requested additional time to file its answer. Id. (emphasis added.)

25

It should also be noted that the facts here are not analogous to those cases where defendants have been found to have waived their objection to the court's assertion of personal jurisdiction. See, e.g., Hartford Fire Ins. Co. v. The Evergreen Org., Inc., 410 F. Supp. 2d 180, 184 (S.D.N.Y. 2006) (holding personal jurisdiction objection waived where "the individual respondents appeared by counsel in opposition to the motion for provisional relief . . . [and] [n]ot only did they make no objection to the Court's personal jurisdiction, their counsel affirmatively noted their lack of any objection to it."); Bryant Park Capital v. Jelco Ventures, No. 05 Civ. 8702(GEL), 2005 WL 3466013, at *1 (S.D.N.Y. Dec. 16, 2005) (holding personal jurisdiction objection waived when defendant failed to assert objection in motion to dismiss for improper venue).

Plaintiff also argues that CR Tech Israel waived its personal jurisdiction objection by participating in the action. This issue is governed by federal law. See Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 61 (2d Cir. 1999) ("[W]hether forfeiture has occurred is a matter of federal procedural law."). While it is true that actions by a defendant may constitute a waiver of the personal jurisdiction defense, id. at 62, the circumstances of this case do not justify the finding of such a waiver. Waiver by participation is generally found where the defendant participates extensively in pre-trial proceedings.

See, e.g., id. at 61-62 ("[Defendant] participated in pretrial proceedings but never moved to dismiss for lack of personal jurisdiction despite several clear opportunities to do so during the four-year interval after filing its answer. These circumstances establish a forfeiture [of the personal jurisdiction defense].") (citing Continental Bank, N.A. v. Meyer, 10 F.3d 1293, 1297 (7th Cir. 1993) (holding personal jurisdiction defense waived where defendants "participated in lengthy discovery, filed various motions and opposed a number of motions," and generally "fully participated in the litigation of the merits for over two-and-a-half years," all without contesting personal jurisdiction)). Mr. Katz's affidavit, which did not address the merits of Plaintiff's allegations, does not approximate the involvement necessary to constitute waiver of the personal jurisdiction defense. Regardless, it should be noted that a district court's decision not to deem a personal jurisdiction defense waived is afforded substantial deference. See Hamilton, 197 F.3d at 62-63 (finding jurisdiction defense waived and noting that "this is the rare case where a district judge's contrary ruling exceeds the bounds of allowable discretion"). Accordingly, the Court denies Plaintiff's request to find that CR Tech Israel has forfeited its personal jurisdiction defense by its limited participation in this action.

Because CR Tech Israel's submission of an affidavit does
not constitute a "first defensive move," Rule 12(h) is not
implicated and the personal jurisdiction objection is not
waived.  Alternatively, if submission of the affidavit did
constitute a first defensive move, it may be construed as
raising an objection to this Court's exercising personal
jurisdiction.

### iii. Plaintiff's Request to Transfer the Action

In the event that no grounds for the exercise of personal
jurisdiction are found, Plaintiff has moved the Court to
transfer the case to the Northern District of Illinois pursuant
to 28 U.S.C. § 1406(a) (2006).[8]  The question, then, is whether
Plaintiff could have brought this action in the Northern
District of Illinois. See Ivy Soc'y Sports Group, LLC v.
Baloncesto Superior Nacional, No. 08 Civ. 8106(PGG), 2009 WL
2252116, at *3 (S.D.N.Y. July 28, 2009) ("[T]he threshhold
inquiry is whether the action could have been brought in the
proposed transferee district.").

---

[8] Plaintiff cites 28 U.S.C. § 1404(a) in support of its motion to
transfer.  Section 1404(a) provides for transfer of a case from
one proper district to another "[f]or the convenience of parties
and witnesses [or the] interest of justice."  28 U.S.C. §
1404(a).  In light of the Court's determination that it lacks
personal jurisdiction over CR Tech Israel, the proper basis for
transfer is 28 U.S.C. § 1406(a), which provides that "[t]he
district court of a district in which is filed a case laying
venue in the wrong division or district shall dismiss, or if it
be in the interest of justice, transfer such case to any
district or division in which it could have been brought."

The Illinois long-arm statute permits the exercise of personal jurisdiction over "[a]ny person" sued in connection with events arising from, inter alia, "(1) [t]he transaction of any business within this State; (2) [t]he commission of a tortious act within this State; . . . [or] (7) [t]he making or performance of any contract or promise substantially connected with this State." 735 ILL. COMP. STAT. 5/2-209 (2008). The statute also contains a catch-all provision that permits courts to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." Id. § 2-209(c). The allegations in this case are sufficient to satisfy both the long-arm statute and the Due Process Clause of the Fourteenth Amendment, which requires that the defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Because "no case ha[s] yet found jurisdiction under the federal constitution where the Illinois constitution ha[s] not also been satisfied," this Court need not address the jurisdictional reach permitted by the Illinois constitution. Citadel Group Ltd. V. Wash. Reg'l Med. Ctr., 536 F.3d 757, 761 (7th Cir. 2008). Because Plaintiff could have brought this action in the Northern District of

Illinois and no personal jurisdiction lies in this district,
Plaintiff's motion to transfer the case is GRANTED.

## Conclusion

For the foregoing reasons, the recommendations of Judge
Eaton are adopted in full [dkt. no. 21]. The entries of default
against CR Tech USA and CR Tech Israel are VACATED, and
Plaintiff's complaint against CR Tech USA is DISMISSED in its
entirety. Plaintiff's motion to transfer the case against CR
Tech Israel to the Northern District of Illinois is GRANTED.
The Clerk of Court is directed to mark this action closed and
transfer the case to the Northern District of Illinois.

SO ORDERED:

DATED:     New York, New York
           April 13, 2010

LORETTA A. PRESKA, Chief U.S.D.J.